### D. C. HULL v. CHARLES E. CHAPEL.[1]

February 3, 1898.

Nos. 10,797—(244).

**Sheriff—Failure to Pay over Money—Redemption from Foreclosure of Mortgage—Tender and Refusal—Disputed Liability—Summary Proceedings.**

G. S. 1894, § 788, which provides for proceeding against a sheriff in a summary manner by order to show cause for failure to pay over money which he has received by virtue of his office, as for a contempt, being penal, was not designed to embrace cases where the fact of the sheriff's duty or liability is fairly and reasonably open to dispute. It only applies when it is the sheriff's plain and undisputed duty to pay and his neglect is wilful. If there is a well-grounded doubt of the sheriff's duty or his liability, or whether the money so received by him has been lost without his fault or negligence, he is entitled to have such questions tried by a civil action.

Appeal by plaintiff from an order of the district court for Ramsey county, Kelly, J., discharging an order requiring the defendant, as sheriff of said county, to show cause why he should not pay over certain moneys to the plaintiff.   Affirmed.

*John E. Stryker*, for appellant.

*F. M. Catlin*, for respondent.

BUCK, J.

There is no controversy as to the facts in this case.   In the month of July, 1897, the plaintiff, Hull, made application under G. S. 1894, § 788, for a summary order requiring the respondent, Chapel, late sheriff of Ramsey county, to pay over to the plaintiff the sum of $1,548.50, with twenty per cent. statutory damages, for failure to pay him money which it is alleged Chapel had received as such sheriff from one Hammond, as redemption money on a mortgage foreclosure sale.

It appears that in 1888 one Burnes, who owned real estate in Ramsey county, executed a mortgage thereon to Hull, containing

1 Reported in 74 N. W. 156.

the usual power of sale in case of default, and that, such default having occurred, the mortgage was foreclosed by advertisement, November 26, 1894, and at the sale Hull purchased the premises for the sum of $1,801.75, the full amount then due on said mortgage. At this time there existed two other subsequent mortgages on the same premises, one held by Deborah L. Hannaford, and the third one by George Hammond. The Hannaford mortgage was also foreclosed, and she bid off the premises for $1,288.25. On January 26, 1895, Hammond paid to Chapel, as sheriff of Ramsey county, the sum of $1,948.50, in full redemption from said sale, and for the use of Hull, and within two days thereafter Chapel tendered this amount in cash (less $427.14, insurance money), to one E. S. Chittenden, Hull's attorney, who foreclosed the mortgage for Hull, but said attorney refused to receive said money for or on behalf of said Hull.

On the hearing of this application it was stipulated in writing that said money was duly tendered to said Chittenden, and that he was at the time of such tender the duly constituted attorney of said Hull. At the time Hammond paid the redemption money he claimed that it was excessive to the extent of the insurance money, viz. $427.14, which had been previously received by Chittenden by reason of the burning of a building upon said premises; and thereupon Chapel, with the consent of Chittenden, repaid said amount to Hammond, leaving in the hands of Chapel as redemption money a balance of $1,521.36, which was the sum duly tendered to Chittenden, and by him refused.

Shortly after this tender was made, Chittenden, as attorney for Hannaford, the second mortgagee, began a suit against Hammond to set aside, as fraudulent, Hammond's mortgage, by virtue of which the latter had redeemed from said foreclosure sale, which action was not determined until June 23, 1896, when the action was dismissed. Further delay was caused by making a settled case and motion for a new trial, which was denied August 12, 1896, but Chapel had no notice thereof until November, 1896, and during the pendency of such proceeding he had deposited in a bank said redemption money so tendered to Chittenden. Long before the determination of said proceedings, and before Chapel had notice thereof,

and on July 24, 1896, Chittenden, as attorney for Hull, demanded said redemption money of Chapel. This was the only demand which Chittenden made on Chapel for said money.

Pending this litigation, and on August 31, 1896, Hull wrote a letter to Chapel, which the latter received September 2, 1896, in which Hull stated that, if Hannaford was not successful in her suit with Hammond, then, if Chapel found he could pay the money, he was then to pay it direct to him (Hull), as he was not satisfied with the way Chittenden had used him. On November 7, 1896, Chapel received another letter from Hull, as follows:

"Mr. Charles Chapel—Dear Sir: Will you kindly inform me whether you have paid the money held by you of the Hammond property over to Mr. Chittenden? If not, has he lately tried to have the case settled? Please answer at your earliest convenience, and oblige. D. C. Hull."

On November 1, 1896, Hannaford, who had substituted other attorneys in the place of Chittenden, made a demand on Chapel for the payment to her of the sum of $1,288.25, with interest from January 25, 1895, out of said redemption money, and also notified Chapel not to pay said redemption money to any other person than said Hannaford. On December 18, 1896, said Hannaford commenced an action against Hull and Chapel for the purpose of, recovering said redemption money. On December 7, 1896, and again on June 29, 1897, Hull demanded said redemption money of Chapel. On May 18, 1897, a demurrer to this action was sustained, and a motion for judgment in behalf of plaintiff was denied. During the pendency of the foregoing proceedings Hull procured an order against Chapel, under said section 788 of the General Statutes of 1894, for the purpose of compelling him to pay Hull said redemption money, but the order was discharged January 16, 1897, upon the ground that the case of Hannaford against Hull and Chapel was then pending.

After Chapel tendered said redemption money to Chittenden, and after Chittenden's refusal to accept the same, and pending said litigation, and after Chapel's receiving said notice not to pay over said money as hereinbefore stated, he was personally unable to determine to whom said money should be paid, and, for the purpose of

safely keeping the same for such person as might be eventually determined by the court entitled thereto, he deposited the exact amount in the Minnesota Savings Bank of St. Paul, a going corporation, then transacting a general banking business in said city of St. Paul, taking a certificate of deposit therefor payable to himself or order, which, ever since the determination of said litigation, he has at all times been ready and willing to transfer and deliver to said Hull, but which he refuses to receive, the bank having become insolvent May 18, 1897, but as to what proportion of the amount of said certificate can be paid by the receivers of said bank Chapel is unable to ascertain.

In order to have a clear understanding of all the facts and their bearing, we have thus made a somewhat lengthy statement of them. The law under which the proceeding is sought to be maintained provides that, if the sheriff fails to pay over to the person entitled thereto any money collected or received as in this case, such person may proceed against such sheriff in a summary manner, before the district court, by an order upon him to show cause why he should not pay over such money, and upon the hearing the court is authorized to order such sheriff to pay over to the person so entitled thereto the amount found due, with 20 per centum thereon as damages for such failure, together with all costs of the proceedings, and, upon failure to comply with such order, he may be committed to jail as for a contempt. G. S. 1894, § 788. This law is quite summary and penal in its nature, and the power thus conferred upon the court, where there is no trial by jury, should not be exercised, unless it can be fairly and reasonably said that the sheriff was guilty of intentional delay or wilful neglect of duty, and in cases where his liability is not reasonably open to dispute or defense. We do not think that the question of the sheriff's keeping the tender good or the liability of his sureties is necessarily involved in this proceeding. The good faith and honest intent of Chapel in the first instance clearly appeared when he tendered the money to Chittenden.

"It is a condition, lying at the very foundation of a private action against a public officer to recover damages for a wrongful act or

omission, that it must rest upon some duty owing to the plaintiff by the officer, which the latter has violated, whereby the plaintiff has sustained a special damage." Throop, Pub. Off. § 707.

In receiving this redemption money, Chapel acted as the custodian of the law, and not as the agent of either party, and there was no affirmative duty resting upon him to hunt up Hull or his attorney, and notify either that the redemption money was in his hands. Hall v. Swenson, 65 Minn. 393, 67 N. W. 1024. When the first demand was made on Chapel, July 24, 1896, there was an action still pending, brought December 6, 1895, by a subsequent mortgagee, to set aside the redemption by virtue of which the sheriff had received the money in question, and no other demand was made for it until December 7, 1896.

Following this demand, we find that a subsequent mortgagee, on December 18, 1896, commenced an action against Hull and Chapel to recover said redemption fund, and that this litigation was not ended until May 18, 1897. It is a notable fact in this case that Chittenden, who was Hull's attorney and foreclosed the mortgage for him November 26, 1894, continued to act for Hull until about the month of September, 1896, and possibly one or two months longer, the exact date not appearing, but during most of this time he was also acting as attorney for Hannaford in her suit against Hammond to set aside as fraudulent the incumbrance by virtue of which Hammond had made the redemption. If Chittenden had succeeded in this action, the redemption money would not have belonged to Hull, and Chapel would have been justified in not paying it over to Chittenden as attorney for Hull, nor to Hull himself. And this very action was pending at the time when Chittenden, as Hull's attorney, made this demand upon Hull for the redemption money, July 24, 1896. Thus we find an attempt made to obtain this redemption fund from Chapel, and at the same time legal steps taken in another action to cancel and set aside the proceedings by which the redemption money came into Chapel's hands as sheriff. Under such circumstances, Chapel was not in default in not paying the money to Chittenden on his demand.

Do the whole facts disclose a liability upon the part of Chapel under said section 788? We think that the remedy given and in-

tended by said section applies only where the sheriff is guilty of wilful or corrupt neglect of duty, and is not designed to embrace cases where there is litigation pending of such a character as to involve the very subject-matter or money, as that in question, and which creates a well-grounded doubt as to what the sheriff should do. A sheriff, under such circumstances, should not be compelled, at his peril, to decide whether he could or could not safely pay over the money to the party demanding it. Wilson v. Broder, 10 Cal. 486; Custer v. Agnew, 83 Ill. 194. And whether Chapel was liable, after the final determination of such litigation, for not paying over the money on demand, after the long delay caused by such litigation, and after the failure of the bank where he had deposited such money, is a question which it is unnecessary for us to consider, as it is a right which Chapel has to have the question tried by civil action, properly instituted.

Order affirmed.